IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CAROLYNNE TILGA and
ADELLA ABEITA,

        Plaintiffs,

v.                                                                                      No. CIV 14-256 JP/RHS

UNITED STATES OF AMERICA,[1]
DISMAS CHARITIES, INC.,
d/b/a DIERSEN CHARITIES ALBUQUERQUE,
and WILL J. PRATER, in his individual capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER

DISMAS CHARITIES, INC.'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT (Doc. No. 11) (Motion to Dismiss) asks the Court to dismiss all four counts that Plaintiffs Carolynne Tilga and Adella Abeita have asserted against Dismas Charities, Inc. d/b/a Diersen Charities Albuquerque (Dismas) for failure to state a valid claim. PLAINTIFFS' RESPONSE IN OPPOSITION TO DISMAS CHARITIES, INC.'S MOTION AND MEMORANDUM TO DISMISS PLAINTIFFS' COMPLAINT (Doc. No. 14) (Response) argues that none of the claims against Dismas should be dismissed. Plaintiffs contend that all claims against Dismas meet the pertinent pleading standards and that Dismas's Motion to Dismiss is premature. DISMAS CHARITIES, INC.'S REPLY IN

---

[1] Plaintiffs filed Motions for Default Judgment against Defendants United States and Will J. Prater for failure to timely file responsive pleadings to the Complaint. (Doc. Nos. 18, 19.) On May 28, 2014, the Clerk of the Court filed entries of default against both Defendants. (Doc. Nos. 20, 21.) Defendants have not yet responded to the Motions for Default Judgment.

1

SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT (Doc. No. 22) (Reply) continues to assert that Dismas is not a proper Defendant in this lawsuit and that all claims brought against it should be dismissed with prejudice.

## Background[2]

Plaintiffs' COMPLAINT FOR DAMAGES FOR PERSONAL INJURY AND CIVIL RIGHTS VIOLATIONS PURSUANT TO THE FEDERAL TORT CLAIMS ACT (FTCA) AND 42 U.S.C. § 1983 (Complaint) alleges that Defendant Will J. Prater, an employee of Dismas, harassed and sexually abused Ms. Tilga and Ms. Abeita.  Dismas is a non-profit halfway house in Albuquerque, New Mexico that opened in March 2005 and that is "operated under contract with the United States Bureau of Prisons (BOP) as a Residential Reentry Center for federal prisoners such as plaintiffs."  Complaint at ¶¶ 6-9, 18.  *See id.* at ¶ 19 ("A halfway house is a place inmates of BOP are sent by BOP to begin the process or reintegration into society after serving a sentence of incarceration.").  Dismas is authorized to do business in New Mexico and is headquartered in Louisville, Kentucky.  *Id.* at ¶¶ 6, 7.  Dismas "operates 26 residential re-entry programs and related services" in a number of states, including New Mexico.  *Id.* at ¶ 17.

At all pertinent times, "Defendant United States of America through the BOP entered into a contract and agency relationship with Dismas, to set up and maintain residential reentry centers, for federal prisoners finalizing their federal sentences."  *Id.* at ¶ 94.  The "Federal Bureau of Prisons," in accordance with a 2010 amendment to the contract between Dismas and the BOP, agreed that the BOP review the performance of Dismas staff to ensure that Dismas was in "contract compliance and that monitoring reports would be prepared."  *Id.* at ¶ 22.

---

[2] The Background section consists of allegations taken from Plaintiffs' Complaint and are accepted as true for purposes of deciding a Rule 12(b)(6) Motion to Dismiss.  *See  Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010).

In 2012, Ms. Tilga was convicted and sentenced by the United States District Court for the District of New Mexico for a violation of 18 U.S.C. § 371. She served a sentence of about six months at a federal prison camp for women, and on February 11, 2013, she continued her period of detention with the BOP at Dismas in Albuquerque. At this time, Mr. Prater was an employee of Dismas. *Id.* at ¶¶ 29, 32, 34, 35. Ms. Tilga contends that Mr. Prater harassed and sexually assaulted her between the dates of February 18, 2013 and March 30, 2013. *Id.* at ¶¶ 37-62. Ms. Tilga further asserts that she reported Mr. Prater's sexual assault to Dismas, that Dismas knew of the assault, and that Dismas knew of Mr. Prater's "inappropriate behavior with female residents, particularly Ms. Tilga, before officially discharging Defendant Prater from employment with Dismas[.]" *Id.* at ¶¶ 64-66.

Ms. Abeita "was sentenced to a term of six months in the custody of the BOP for a conviction for conspiracy to unlawfully obtain a controlled substance." *Id.* at ¶ 69. In January 2013, the BOP released Ms. Abeita to the custody of Dismas in Albuquerque to continue her period of detention with the BOP. *Id.* at ¶¶ 70, 71. Mr. Prater was employed at Dismas during Ms. Abeita's period of confinement at Dismas and sexually harassed Ms. Abeita between about February 15, 2013 and March 30, 2013. *Id.* at ¶¶ 72, 74-84. Ms. Abeita told another resident of Dismas that Mr. Prater had assaulted her and also advised Mr. Prater that his sexual advances were unwelcome. *Id.* at ¶¶ 83, 85. Ms. Abeita asked Dismas staff members and supervisors to allow only female employees to enter the women's dormitories "and not male employees like defendant Prater." *Id.* at ¶ 91. On about April 1, 2013, Ms. Abeita submitted an action request to talk to a higher level Dismas employee about Mr. Prater. *Id.* at ¶ 92.

Plaintiffs' Complaint sets forth seven claims against Defendants United States of America, Dismas, and Mr. Prater.  Three claims are asserted against the United States -- negligence and negligent hiring, retention, supervision and training of Dismas in relation to placement of prisoners by the United States (Counts I, II, and III).  Plaintiffs raise Eighth Amendment and Equal Protection claims, under 42 U.S.C. § 1983, against Defendants Dismas and Mr. Prater (Counts IV and V), a claim of negligent hiring, retention, supervision, and training of Mr. Prater against only Dismas (Count VI), and a claim that Dismas is vicariously liable for intentional torts committed by Mr. Prater (Count VII).  Thus, Dismas's Motion asks that the Court dismiss, with prejudice, Counts IV, V, VI, and VII as asserted against it, and accordingly, that Dismas be dismissed as a party to this lawsuit.

## Legal Standard

The Supreme Court has articulated a two-step approach for district courts to use when considering a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  First, a court should identify the adequately pleaded factual allegations contained in the complaint, disregarding unsupported legal conclusions in the process. *Id.* at 678. While a complaint need not include detailed factual allegations, it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*  Next, having identified the adequately pleaded claims, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678.

"[A] plaintiff must 'nudge [ ][her] claims across the line from conceivable to  plausible' in order to survive a motion to dismiss. . . .  Thus, the mere metaphysical possibility that *some*

plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original) (internal citation omitted).  Stated differently, a claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Plausibility lies somewhere between possibility and probability; a complaint's "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

## Analysis

**I.      Section 1983 Claims Against Dismas (Counts IV and V)**

The 42 U.S.C. § 1983 claims against Dismas allege violations of Plaintiffs' Eighth Amendment and equal protection rights.  Complaint, at 17-19.  Section 1983 created a federal cause of action for damages to vindicate alleged violations of federal law committed by individuals or entities acting under color of state law.  In order to recover damages under § 1983, a plaintiff must prove that the defendant violated rights *while acting under color of state law*. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) (emphasis added).

> Section 1983 created a federal cause of action for damages to vindicate alleged violations of federal law committed by individuals acting under color of state law. . . . Therefore, the only proper defendants in a Section 1983 claim are those who represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.

*Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995).  *See, e.g., Beals v. U.S. Dep't of Justice*, 460 F. App'x 773, 775 (10th Cir. Feb. 6, 2012) (unpublished) (noting that § 1983 "appli[es] only to action by state and local entities, not by the federal government") (citation omitted).

The Tenth Circuit Court of Appeals has advised that courts should take a "flexible approach to the state action doctrine, applying a variety of tests to the facts of each case." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1448 (10th Cir. 1995). Courts may employ four different tests in determining whether state action exists: (1) the "close nexus test" involves a sufficiently close nexus between the State and the challenged conduct of the entity or individual in question, such that the action of that defendant may be "fairly treated as that of the State itself[;]" (2) the "symbiotic relationship test" asks if "the [S]tate has '[] far insinuated itself into a position of interdependence' with the private party[;]" (3) the "joint action test" applies when a private party is a "willful participant in joint activity with the State or its Agents[;]" and (4) the "public function test" is satisfied when "a private entity . . . exercises 'powers traditionally exclusively reserved to the State.' " *See Wittner v. Banner Health*, 720 F.3d 770, 775-77 (10th Cir. 2013) (summarizing tests) (internal citations omitted)

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal citation omitted). A defendant's exercise of power may be actual or apparent. *Jojola*, 55 F.3d at 493. The plaintiff bears the burden of pleading and ultimately establishing "the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" *Id.* at 494.

Plaintiffs surmise that "Dismas *could be* deemed a state actor under any one of the theories of liability discussed [in its Response] because running a half-way house for inmates qualifies as conduct fairly attributable to the state as a public function." Response at 2 (emphasis

added).  Plaintiffs also speculate that "discovery *will likely* reveal evidence of a nexus between the [S]tate and Dismas[,]" and that this question is "very fact specific" and "better suited for summary judgment."  *Id.* at 2, 5, 6 (emphasis added).  Plaintiffs' conjecture and argument do not persuade the Court that Defendants' Rule 12(b)(6) Motion is premature.  S*ee, e.g., Wittner*, 720 F.3d at 774-75, 780-81 (concluding that the plaintiffs failed to state a claim that defendants were state actors for purposes of a § 1983 claim).  Similarly, the unsupported predictions do not provide the Court with sufficient factual content such that it can draw reasonable inferences in favor of Plaintiffs.

Plaintiffs further contend that their Complaint "clearly alleges on its face that Dismas was acting, in part, pursuant to government directives[,]" and that there is a "specific allegation that upon belief, Dismas acted under color of law."  Response at 5 (*citing* Complaint at ¶¶ 12, 133).  The cited paragraphs of Plaintiffs' Complaint merely allege that Dismas acted "under color of law," with no mention of "state law."  Complaint at ¶¶ 12, 133.

In addition, Plaintiffs argue that the "[o]peration of a prison constitutes a traditional state function."  Response at 6.  They "submit" that operation of a halfway house "is analogous to the operation of a prison[,]" and that, therefore, the symbiotic relationship test or public function test is satisfied for purposes of a Rule 12(b)(6) motion.  *Id.*  Plaintiffs set forth citations to case law in support of the various tests that courts may employ to determine the question of whether a purported wrongdoer acted under color of state law.  However, Plaintiffs never allege how conduct by Dismas has any connection to state action other than to summarily urge that a halfway house is similar to a state-run prison.  This unsupported, conclusory argument is not sufficient.  Indeed, the 159-paragraph Complaint neither alleges that Dismas acted under color of *state* law, nor that its conduct constitutes *state* action.

7

More specifically, for purposes of applying the symbiotic relationship test, a plaintiff bears the burden of demonstrating that the "state 'has so far insinuated itself into a position of interdependence' with a private party [that] 'it must be recognized as a joint participant in the challenged activity.'" *Wittner*, 720 F.3d at 777-78 (citations omitted). In other words, the plaintiff must allege an entwinement between the private entity and the State. *See id.* at 778 (citations omitted). In this case, there is no allegation of any relationship, let alone of a symbiotic relationship, between Dismas and the State.

In addition, Plaintiffs' summary argument that the public function test is satisfied solely because a halfway house is operated like a state prison is unavailing. The public function test asks if the challenged actions are traditional and exclusive functions of the state. *Id.* at 776-77 (citations omitted). As observed by the Tenth Circuit Court, "[t]his test is difficult to satisfy. While many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Id.* at 777 (citation omitted). Plaintiffs offer no allegations or facts sufficient to meet this difficult-to-meet test.

In sum, Plaintiffs do not allege that the State of New Mexico plays any role in overseeing, operating, regulating, or funding Dismas. Plaintiffs do not assert, for example, that New Mexico provides any services to Dismas. Instead, Plaintiffs accurately aver that Dismas is a non-profit corporation that is operated under contract with the BOP, a federal agency. Complaint at ¶¶ 6, 8; Motion to Dismiss at 5-6; Reply at 2-3. The Complaint states that Dismas provides residential re-entry housing for federal, not state, prisoners. *See id.* at ¶ 9. The "directives and standards" applicable to Dismas are set forth by defendant United States of America, rather than the State of New Mexico. *See id.* at ¶ 12. The federal BOP reviews

Dismas's performance under the federal contract. *Id.* at ¶ 22. The BOP evaluates personnel at BOP in accordance with amendments to the federal contract. *Id.*

Plaintiffs' allegations, which are accepted as true for purposes of this Motion, fail to allow this Court to find that Dismas or its employees functioned as a state actor.[3] There is no allegation of any nexus between Dismas and the State of New Mexico. Similarly, Plaintiffs do not allege any conduct causing a deprivation of a federal right that is "fairly attributable to the state." *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).[4] Stated differently, Plaintiffs fail to "nudge" their § 1983 claims against Dismas "across the line from conceivable to plausible." *See Ridge at Red Hawk*, 493 F.3d at 1177. Accordingly, the Court will grant Defendants Motion and dismiss with prejudice the § 1983 claims (Counts IV and V) against Dismas.

---

[3] The Court recognizes that federal courts are split on the question of whether organizations that operate non-profit, private halfway houses, and their employees, are state actors for purposes of § 1983. *Kelly v. N.J. Dep't of Corr.*, 2012 WL 6203691, at *6 (D.N.J. Dec. 11, 2012) (unpublished) (collecting cases). *See also Allen v. Dawson*, 2012 WL 2878031, at *1 (noting that courts often find that employees of private halfway houses are not acting under color of state law) (D. Colo. July 12, 2012) (unpublished). Similar to the *Kelly* Court, this Court determines that Plaintiffs failed to allege any facts to suggest that Dismas functioned as a state actor. *See Kelly*, 2012 WL 6203691, at *6.

[4] Plaintiffs did not argue that their § 1983 claims should be construed as *Bivens* claims. *See* Complaint and Response.). A *Bivens* claim against a federal agent is the equivalent of a § 1983 claim against a state actor. *Springer v. Albin*, 398 F. App'x 427, 435 n. 5 (10th Cir. 2010). Moreover, this is not a case where Plaintiffs' claims should be construed liberally. *Compare Edwards v. Cauthron,* 124 F.3d 216 (Table, Text in Westlaw), 1997 WL 579182, at *1(10th Cir. Sept. 18, 1997) (unpublished) (construing *pro se* litigant's claims as *Bivens* claims). Defendants assert that even if Plaintiffs had sought to bring *Bivens* claims, there is "no right of action under *Bivens* against a private prison for alleged constitutional deprivations when alternative [FTCA] causes of action for damages are available." Reply at 3. Because Plaintiffs did not raise this issue, the Court does not decide it.

## II. Negligent Hiring, Retention, Supervision and Training Claim Against Dismas (Count VI)

In order to prove a claim of negligent hiring, retention, supervision and training, a plaintiff must supply evidence that the defendant was the employer of the employee in question, that the defendant knew or should have known that hiring, retaining, and/or supervising the employee would create an unreasonable risk of injury to a plaintiff, that the defendant failed to use ordinary care in hiring, retaining, and or supervising the employee, and that the defendant's negligence in hiring, retaining, and/or supervising the employee was a cause of the plaintiff's injury. UJI 13-1647 NMRA. *See also Ocana v. Am. Furniture Co.,* 135 N.M. 539, 554 (2004) (the plaintiff must show that the employer knew or reasonably should have known that some harm might be caused by the acts or omissions of the employee in question); *F & T Co. v. Woods*, 92 N.M. 697, 699-700 (1979) (discussing elements of the claim).

Defendants argue that Plaintiffs' allegations contain nothing more than a formulaic statement of the elements of the claim and that Plaintiffs offered no information other than mere speculation and metaphysical possibility to support this cause of action. Motion at 6-11. In addition, Defendants assert that there are no allegations that Mr. Prater had a history of sexual assaults or that Dismas knew or should have known about this history before hiring him. Reply at 4.

It is true that Plaintiffs' Complaint recites the bare elements of the claim under Count VI. Complaint at ¶¶ 148-155. However, other portions of the Complaint provide more specific allegations. For example, Plaintiffs assert that Dismas employed Mr. Prater and placed him in a position of some authority. *See id.* at ¶ 50. Dismas knew that sexual misconduct at the Dismas facility was a problem; Dismas failed to monitor and eliminate sexual assaults and sexual misconduct; and Dismas's or the government's lack of adequate management made it highly

likely that a sexual assault would occur.  *Id.* at ¶¶ 24, 25, 26.  Plaintiffs further allege that Mr. Prater repeatedly approached Ms. Tilga in a sexual manner while she was housed at Dismas.  *Id.* at ¶¶ 41-45.  He also made sexually suggestive comments through the "overhead speaker system" at Dismas.  *Id.* at ¶ 54.

According to Plaintiffs, Dismas management knew or should have known of Mr. Prater's inappropriate actions towards Ms. Tilga and "were dismissive of Mr. Prater's inappropriate behavior."  *Id.* at ¶ 55.  The Complaint also alleges that while Ms. Tilga was at Dismas, "it was common knowledge by [Dismas] staff and residents that defendant Prater entered the women's dormitories, bathroom and shower areas, many times unannounced and unaccompanied by other employees."  *Id.* at ¶ 63.  Plaintiffs have grounds to believe that Dismas knew of Mr. Prater's inappropriate behavior with female residents, including Ms. Tilga, before discharging Mr. Prater.  *Id.* at ¶¶ 64, 65.  Despite knowing about Mr. Prater's alleged criminal conduct, Dismas purportedly did not notify law enforcement or do anything to stop Mr. Prater.  *Id.* at ¶ 66.  Plaintiffs allege that Ms. Tilga reported the assault by Mr. Prater to Dismas but that Dismas did not adequately address the situation.  *Id.* at ¶ 67.

There are similar allegations by Ms. Abeita.  For example, she too alleged that Mr. Prater sexually harassed her on numerous occasions while at Dismas.  *Id.* at ¶ 85.  Mr. Prater openly flirted with female residents and openly whistled and sang to the female residents in the hallways at Dismas.  *Id.* at ¶¶ 88, 89.  Ms. Abeita asserted that she asked Dismas staff members and supervisors to allow only female employees in the women's dormitories but that her requests were ignored.  *Id.* at ¶ 91.  Ms. Abeita also submitted an action request to talk to a higher level Dismas employee about Mr. Prater and she requested that Dismas preserve the video footage at the facility that would document Mr. Prater's conduct.  *Id.* at ¶¶ 92, 93.

The Complaint is far from clear as to the dates of many of the activities, alleged reports to Dismas, and responses by Dismas.  In addition, the Complaint lacks specificity with respect to how Dismas should have known that hiring Mr. Prater would create an unreasonable risk of injury to Plaintiffs.  The claim, as set forth, does not appear strong.  However, Plaintiffs have alleged facts tending to show that Dismas employed Mr. Prater, that Mr. Prater openly engaged in inappropriate behavior with female residents at Dismas, that Dismas retained Mr. Prater over a period of months, that Plaintiffs reported the activities to Dismas, and that Plaintiffs suffered injuries at the hands of Mr. Prater.

Moreover, " 'Rule 8(a)(2) still lives' "and under it " 'specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' "  *S.E.C. v. Shields*, 744 F.3d 633, 641 (10th Cir. 2014) (internal citation omitted).  *See Twombly*, 550 U.S. at 570 (plaintiffs must to make their "claim[s] to relief . . . plausible on [their] face" and provide fair notice to a defendant).  The Court concludes that at the Rule 12(b)(6) stage, Plaintiffs have provided adequate notice and have nudged their Count VI claims beyond the conceivable to the plausible.  Therefore, the Court will deny Defendants' Motion to Dismiss the Negligent Hiring, Retention, Supervision, and Training claim (Count VI) against Dismas and will allow the claim to proceed.

### III. Vicarious Liability of Dismas for Mr. Prater's Alleged Intentional Torts[5]
### (Count VII)

"Under basic respondeat superior principles, an employer is liable for an employee's torts committed within the scope of his or her employment." *Lymon v. Aramark Corp.*, 728 F. Supp. 2d at 1271 (*quoting Ocana*, 135 N.M. at 551). In *Faragher v. City of Boca Raton*, 524 U.S. 775, 793 (1998), the United States Supreme Court analyzed whether employers could be held vicariously liable for the *intentional* torts of their employees, as Plaintiffs seek to do here. The Supreme Court explained:

> A "master is subject to liability for the torts of his servants committed while acting in the scope of their employment." Restatement § 219(1)). This doctrine has traditionally defined the "scope of employment" as including conduct "of the kind [a servant] is employed to perform," occurring "substantially within the authorized time and space limits," and "actuated, at least in part, by a purpose to serve the master," but as excluding an intentional use of force "unexpectable by the master." *Id.*, § 228(1).

New Mexico law defines an act, although unauthorized, as falling within the scope of employment if the following four elements are met:

> (1) [the act] is the kind the employee is employed to perform; (2) [it] occurs during a period reasonably connected to the authorized employment period; (3) [it] occurs in an area reasonably close to the authorized area; and (4) [it] is actuated, at least in part, by a purpose to serve the employer.

*Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 142 N.M. 583, 588 (Ct. App. 2007) (citation omitted).

---

[5] Plaintiffs label Count VII as "Intentional Tort Claims under State Law Against Defendants Dismas and Prater." Complaint at 20. They seek to hold Dismas vicariously liable for intentional torts that they allege Mr. Prater "committed within the scope and course [of] his duties as an employee of Dismas." *Id.* at ¶ 158. It is unclear whether Plaintiffs are seeking to separately assert state law claims against Mr. Prater while also asking that Dismas be held vicarious liable for Mr. Prater's alleged tortious conduct, or whether Plaintiffs are pursuing solely a vicarious liability claim against Dismas. The Court addresses only Dismas's argument that the vicarious liability claim against it must be dismissed for failure to state a claim.

*See also E.E.O.C. v. Genesco, Inc.*, 2011 WL 2490634, at *2 (D.N.M. Apr. 12, 2011) (unpublished) (applying New Mexico law and discussing scope of employment elements). New Mexico's civil jury instructions sets forth the following elements regarding conduct within scope of employment:

> 1. It was something fairly and naturally incidental to the employer's business assigned to the employee, and
>
> 2. It was done while the employee was engaged in the employer's business with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee.

UJI 13–407 N.M.R.A.

Dismas argues that it cannot be held vicariously liable for Mr. Prater's intentional torts or criminal actions, *e.g.*, sexual assault, battery, false imprisonment, and intentional infliction of emotional distress, Complaint at ¶ 157, because any such behavior was outside the course of conduct and not "fairly and naturally incident to [Dismas's] business." Motion at 11. According to Dismas, any such misconduct by Mr. Prater arose "wholly from some external, independent, and personal motive on the part of the servant," and was outside the course of employment. Therefore, Dismas cannot be held accountable for Mr. Prater's alleged actions.

Plaintiffs respond that "[u]nder the doctrine of respondeat superior, an employer can be held vicariously liable for the negligent actions of an employee who is acting within the scope of his employment" and that this matter is a question of fact for a jury. Response at 10-11. However, Plaintiffs' citation to case law relating to "negligent actions," when they seek to hold Dismas liable for an employee's intentional torts, is misplaced.

Plaintiffs' primarily urge that the scope of employment question should be reserved for the jury. Response at 10, 11, 12. It is true that typically, the issue of whether an employee is

14

acting within the course and scope of employment is a question of fact.  *Rivera v. New Mexico Highway and Transp. Dep't*, 115 N.M. 562, 564 (Ct. App.), *cert. denied*, 115 N.M. 545 (1993) (citation omitted).  "However, when no reasonable trier of fact could conclude that an employee is acting in the course and scope of employment," or where only one reasonable conclusion can be drawn as to this question, a court may determine that the conduct was not in the scope of employment as a matter of law.  *See id.* at 564 (citation omitted).  This is one of those cases where only one reasonable conclusion can be drawn as to the scope of employment question.

The allegations are that Mr. Prater was at work and employed by Dismas when he committed the misconduct.  Ms. Tilga contends that Mr. Prater, while at work, asked her to "launder" $50,000 for him, made sexually suggestive remarks, asked for sexual contact and intercourse, offered to falsify Dismas records to meet with her, made sexually suggestive comments over the Dismas intercom, pinned her against the wall in the women's bathroom, and sexually assaulted her.  Complaint at ¶¶ 37, 41, 43, 44, 54, 56, 57, 58, 62.  Ms. Abeita alleges that Mr. Prater made unwelcome sexual advances towards her, watched her showering, and assaulted her.  Complaint at ¶¶ 77, 79, 81.

None of the alleged disgusting conduct by Mr. Prater at his place of employment can be said to further Dismas's business purposes or mission to protect and rehabilitate offenders.  Money laundering, sexual assault, battery, harassment, and falsification of company records are not "fairly and naturally incidental" to Dismas's service or to the job Mr. Prater was performing.  These types of alleged misconduct are entirely disconnected from the purpose of Dismas's business and Mr. Prater's employment.  Such conduct arises from "external, independent and personal motives" on the part of Mr. Prater.  Furthermore, there are multiple cases holding that sexual harassment or sexual assaults fall outside the scope of employment.  *See, e.g., Faragher*,

524 U.S. at 793-796 (collecting cases); *see id.* at 796 n. 2 ("many courts in non-Title VII cases have held sexual assaults to fall outside the scope of employment").

Based on the allegations, Mr. Prater was deviating from his work tasks when he assaulted and harassed Plaintiffs. Only one reasonable conclusion can be drawn: Mr. Prater was not acting within the scope of employment when committing the alleged intentional torts, and therefore, Dismas cannot be held vicariously liable for his misconduct. Accordingly, the Court will grant Defendants Motion and dismiss with prejudice the vicarious liability claim (Count VII) against Dismas.

IT IS ORDERED that DISMAS CHARITIES, INC.'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT (Doc. No. 11) is GRANTED in part and DENIED in part, with the result that:

(1)     Plaintiffs' Count IV and Count V claims under 42 U.S.C. § 1983, asserting violations of the Eighth Amendment and equal protection rights against Defendant Dismas, will be dismissed with prejudice;

(2)     Plaintiffs' Count VII vicarious liability claim against Defendant Dismas will be dismissed with prejudice; and

(3)     Plaintiffs' Count VI Negligent Hiring, Retention, Supervision and Training of Will Prater against Dismas will proceed.

_____
SENIOR UNITED STATES DISTRICT JUDGE